THE PEOPLE *ex rel.* Paul W. Abt, County Collector, Appellant, *vs.* PROSPER J. SOUCY *et al.* Appellees.

*Opinion filed December 17, 1913.*

1. DRAINAGE—*whether lands are benefited at all is a question settled at the time classification is made.* Whether the lands in a farm drainage district are benefited at all by the improvement is a question which is settled at the time the classification of the lands is made, and hence an objection, upon application for judgment and order of sale for a delinquent installment of the assessment, raising the point that the land derived no benefit from the improvement should be stricken from the files on motion.

2. SAME—*whether property has been properly classified as assessed land is a question not open on application for sale.* The classification of lands in a farm drainage district is subject to review by the county court upon appeal by any land owner who may feel aggrieved, and the question whether his land is benefited at all or has been classified too high may be submitted to a jury upon such appeal, but the question whether lands have been properly classified as assessed lands cannot be raised upon an application for judgment and order of sale for a delinquent installment of the assessment.

3. SAME—*question whether farm drainage assessment exceeds benefits may be raised on application for sale.* Owners of land in a farm drainage district are entitled to a hearing upon the question whether their land is assessed more than it is benefited by the improvement, and as the first opportunity to raise that question in such district is upon application for judgment and order of sale it may be raised at that time, in the absence of any question of estoppel. (*People* v. *Welch,* 252 Ill. 167, and *People* v. *Brown,* 253 id. 578, adhered to.)

4. SAME—*when owners are estopped to question amount of the assessment.* Land owners in a farm drainage district who, with knowledge of the amount of the assessment against their lands, petition the commissioners to divide the assessment into installments and issue bonds therefor, thereby inviting investors to purchase the bonds, recognize the validity of the assessment and the liability of their lands to pay their proportionate share of the assessment, and are estopped, upon an application for judgment and order of sale for a delinquent installment, to urge the objection that the amount of the assessment exceeds the benefits to their land from the proposed improvement.

5. SAME—*the collector may urge point that land owners are estopped to question amount of assessment.* The county collector, on application for judgment and order of sale for a delinquent installment of a farm drainage assessment, may urge the point that the land owners, by their action in petitioning to divide the assessment and issue bonds, are estopped to question the amount of the assessment, even though the bondholders are not nominal parties to the suit, as in such case the bondholders are the real parties in interest, and the people, through the proper officers, act as the agent of the bondholders in collecting the assessment.

APPEAL from the County Court of St. Clair county; the Hon. FRANK PERRIN, Judge, presiding.

CHARLES WEBB, State's Attorney, (R. V. GUSTIN, and A. H. BAER, of counsel,) for appellant.

C. H. G. HEINFELDEN, for appellees.

Mr. CHIEF JUSTICE COOKE delivered the opinion of the court:

Drainage District No. 1 in townships 1 and 2 north, range 9 west, and townships 1 and 2 north, range 10 west, in St. Clair county, Illinois, was organized under the Farm Drainage act. In June, 1907, the commissioners levied an assessment upon the lands in the district for $204,735. In January, 1909, they levied an assessment for the sum of $102,000, and in November, 1909, they levied a third assessment for $76,500. In each instance the commissioners borrowed ninety per cent of the aggregate amount of the assessment and issued the bonds of the district therefor, due and payable in equal amounts in from two to fifteen years. At the June term of the county court of St. Clair county the county collector applied for judgment and an order of sale against the lands of appellees for the delinquent installments of each of these three assessments falling due in February and March, 1913. The two previous installments of each of these assessments which fell due in

February and March of 1911 and 1912, respectively, were not paid by appellees, and judgment against their lands was allowed to go by default. All previous installments had been paid. To the application appellees, separately, filed nine objections. As the objections were identical the causes were consolidated and tried as one. Upon the hearing the court overruled all of the objections except those which pertained to benefits, and found that the lands of appellees were benefited only to the extent of two-thirds of the assessments, and ordered that judgment for one-third of the installments objected to be denied and that judgment for two-thirds of such installments be rendered against said lands.

The two objections pertaining to benefits were the eighth and ninth. The eighth objection was, that the amount of assessments levied against the property is more than the benefits derived from the improvement, and the ninth was, that the property assessed derived no benefit whatever from the alleged improvement. A motion to strike each of the objections was overruled. This motion should have been allowed as to the ninth objection. Whether these lands were benefited by the proposed improvement was conclusively settled at the time the classification of the lands was made, and appellees are bound by this finding.

An amended classification of the lands of the district was adopted just prior to the time the first assessment above mentioned was levied, and another classification was made immediately preceding the levy of the succeeding assessment, the last two assessments being based upon that classification. These classifications were subject to review by a jury in the county court upon the appeal of any land owner who might feel aggrieved, but when once made the classification is final until changed by the commissioners in accordance with the statute. When properly made this classification will result in each tract of land bearing its proportionate share of the burden of all future assessments,

and if any land owner desires to show that his land is not benefited at all or has been classified too high by the commissioners in proportion to other lands in the district, he has his remedy by appeal to the county court, where the matter can be finally determined by a jury. Whether any tract has been properly classified as assessed lands is not open for consideration on objections to an application for sale for delinquent assessments.

Appellant devotes a considerable portion of his argument to the proposition that the court has no right at this hearing to inquire whether property assessed under the Farm Drainage act for the purpose of constructing improvements contemplated by that act has been assessed more than it is benefited by the improvements, and counsel state frankly that they are aware of several decisions of this court wherein this question has been decided contrary to their view. They mention, among other cases, *People v. Welch,* 252 Ill. 167, and *People v. Brown,* 253 id. 578, which we are asked to overrule. Although counsel have presented a vigorous argument in support of their view we hold to the view expressed in these and other cases, that the land owner has a right to a hearing in some forum on the question whether the benefits are equal to the assessments, and as this is the only opportunity presented, he can have that hearing upon the application for judgment for delinquent assessments. The court properly denied the motion to strike the eighth objection.

Evidence was adduced on the hearing which disclosed that appellees were estopped from objecting to the payment of the installments of any of these assessments upon the ground that they exceeded the benefits to their lands. At a meeting of the drainage commissioners on June 3, 1907, it was resolved that $204,735 be raised by special assessment upon the lands of the district and that that sum be apportioned among the several tracts according to the acreage of each and its figure of classification. Between that

date and June 12, 1907, appellees and other land owners of the district representing that they owned, in the aggregate, a majority of the lands of the district, petitioned the commissioners to pass a resolution providing for the issuance of bonds of the district to an amount not exceeding ninety per cent of the amount of the assessment levied on June 3 for the purpose of causing the lands of the district to be properly drained, setting up in support of the petition that it would be very burdensome and work an extreme hardship to the owners and tax-payers of the district if compelled to pay said assessment in one payment. They also petitioned that the commissioners divide ninety per cent of the assessment into fifteen payments and make and issue bonds so that one-fifteenth of the amount would mature each year, thus making the bonds run for from one to fifteen years, respectively, so that, as the petition recited, the taxes thus divided would fall lightly upon the land owners and tax-payers in the district. On June 12, 1907, a resolution was adopted at a meeting of the commissioners which recited the receipt of this petition and ordered that the amount theretofore levied be made payable in fifteen annual installments, and at a meeting of the commissioners held on June 20, 1907, it was resolved that the commissioners borrow the sum of $184,000 and that the bonds of the district be issued therefor, to become due and payable $13,000 two years from the date of sale and $13,000 annually thereafter, the last to become due and payable in fifteen years. On January 1, 1909, the commissioners, by resolution, ordered that the sum of $102,000 be raised by special assessment on the lands of the district. Immediately thereafter appellees, with other petitioners who represented that they owned a majority of the lands of the district, again petitioned the commissioners, for the same reasons set out in the former petition, to require ten per cent of $102,000 theretofore levied to be made payable February 1, 1910, and the remaining nine-tenths in four-

teen equal, annual installments. On February 8, 1909, at a meeting of the commissioners a resolution was adopted reciting the receipt of said petition and ordering that the amount levied be made payable as prayed for in the petition. It was ordered that the commissioners borrow the sum of $91,800 and that the bonds of the district be issued therefor, payable in the manner prayed by said petition. On November 6, 1909, at a meeting of the commissioners another special assessment of $76,500 was ordered to be raised upon the lands of the district. Immediately thereafter a third petition, signed by appellees and others representing themselves to be a majority of the land owners of the district, was presented to the commissioners, asking that the assessment be divided into installments and that bonds be issued, setting up the same reasons as were given in the first mentioned petition. This petition was also favorably acted upon, and it was ordered that nine-tenths of the amount of the assessment be borrowed and bonds of the district be issued therefor. All the lands of the district had been classified at the time each of these special assessments was made, and appellees had notice of these classifications. Each of the petitions signed by appellees specified the particular assessment to which it was directed, thereby disclosing that they were advised of the amount of the special assessment levied in each instance. Thus by a simple mathematical calculation they could have determined the exact amount of the various assessments each of them was liable to pay. If, possessed of this information, they so ratified the action of the commissioners in the levy of these assessments as to induce investors to purchase bonds for the payment of which the various installments of these assessments were pledged, they should be estopped from now denying the validity of the assessments.

It is not contended that the petitions filed with the commissioners asking them to divide the assessments into installments and to issue the bonds of the district were filed

261 — 8

under section 65 of the Farm Drainage act or that the commissioners were bound to take the action required by that section. By section 63 of the act the commissioners are authorized, in their discretion, to order assessments levied to be paid in installments and in such amount and at such time as they may think proper and advisable, provided that the postponement of the last payment be not longer than fifteen years from the time of the levy. This section also provides that the commissioners may borrow money, not exceeding in amount ninety per cent of any assessment or levy unpaid at the time of borrowing, and may secure the payment of the same by the notes or bonds of the district. Each petition filed with the commissioners after the making of each of the special assessments above referred to was evidently intended to persuade them to exercise the discretion given them by the statute to divide the assessment into installments, borrow ninety per cent of the amount of each assessment and issue the bonds of the district therefor. The petition in reference to the second assessment for $102,000 did not expressly request the commissioners to issue bonds of the district but merely asked that the assessment be divided into installments. The statute provides that in the issuing of bonds the commissioners shall not be held personally liable for the money borrowed, but that the bonds shall constitute a lien upon the assessment or assessments, levy or levies, on account of which they are issued, for the re-payment of the principal and interest thereon. The assessments made are constituted a lien on each tract of land assessed, to the amount of its proportionate share of the assessment. By filing their written petitions with the commissioners that the several assessments be divided into installments and the bonds of the district be issued, appellees recognized the validity of the assessments and the liability of their lands to pay their proportionate share of the assessments levied. This action on their part amounted to an assurance to any prospective

purchaser of the bonds of the district that they would not object to the validity of these assessments and that the levy of the same met with their approval.

It is contended that this question cannot be raised in this proceeding as the bondholders are not parties and are not seeking here to collect their bonds. By the statute the county treasurer is made the treasurer of a special drainage district, and he is required to apply the tax collected for the purpose of paying the principal and interest of bonds of the district to the payment of such indebtedness, alone. While the statute provides for the collection of delinquent installments of special assessments levied by special drainage districts in the same manner as general taxes, the people, through the proper officers, act only as the agent for the bondholders for whom the collection is made and whose bonds constitute a lien upon the assessment. The bondholders are the real parties in interest and have the right to take appropriate action to compel the public officials to take the necessary steps to enforce the collection of the tax. It would be unconscionable to permit appellees to thus approve of the levy of special assessments, procure the postponement of payment and the issuance of bonds, thereby inviting investors to purchase the bonds of the district, and then question the validity of the assessment on an application for judgment and order of sale on delinquent installments. Appellees are now estopped by their own act from questioning the validity of any of said assessments or from asserting that the assessments exceed the benefits to their lands.

The judgment of the county court is reversed and the cause is remanded, with directions to overrule all objections and to enter judgment for the amount of tax due and an order of sale.

*Reversed and remanded, with directions.*