THE PEOPLE *ex rel.* P. L. Dorris, County Collector, Appellee, *vs.* H. J. GARNER *et al.* Appellants.

*Opinion filed October 24, 1916.*

1. DRAINAGE—*when error in description of land is not fatal on an application for judgment and order of sale.* Where a forty-acre tract owned by two persons is assessed and classified by a description which covers the entire tract and states the correct number of acres owned by each person, the fact that the description of the land as the north part of the forty, containing thirteen acres, and the south part of the forty, containing twenty-seven acres, is not correct because the creek forming the boundary between the two owners is very crooked and runs diagonally through the forty, thus putting some of the land in the thirteen-acre parcel in the south part of the forty and some of the twenty-seven acre parcel in the north part, does not constitute a fatal objection on application for judgment and order of sale.

2. SAME—*party purchasing land after spreading of assessment is not barred from objecting on application for sale.* The fact that a person purchases land after a drainage assessment has been spread and in the deed agrees to assume and pay all drainage taxes or assessments does not preclude him from objecting and offering evidence on application for judgment and order of sale for a delinquent installment of the assessment, as the right of the People to enforce the lien of the drainage assessment depends upon the legality of the assessment and not upon agreement between land owners.

3. SAME—*question of amount of benefits is open to inquiry on application for sale.* While the classification of lands in a farm drainage district at a figure above zero is conclusive that the lands are benefited, yet the amount of benefits is open to inquiry upon application for judgment and order of sale; but the delinquent list is *prima facie* evidence that the lands will be benefited to the amount stated in the list, and it is not enough to show that the property has not yet received that amount of benefits.

4. SAME—*when inadequacy of outlet is not a valid objection on application for sale.* Inadequacy of outlet is not a sufficient objection to justify refusing judgment and order of sale for a delinquent farm drainage assessment unless it appears that the outlet cannot be made adequate for an amount equal to the benefits to the land affected.

5. SAME—*commissioners may be compelled to furnish sufficient outlet.* Owners of assessed lands in a farm drainage district may compel the commissioners to furnish ample outlet, as the provi-

sions of the Farm Drainage act requiring the commissioners to provide ample outlet are mandatory.

6. SAME—*commissioners of an upper district may enlarge or deepen the outlet through lower district.* Under section 41 of the Farm Drainage act the commissioners of an upper district, if they find upon completion of the work that the outlet is not sufficient to drain the lands of the district as contemplated, may, upon payment of compensation to the lower district, enter upon the lower district and deepen or enlarge the outlet so as to provide adequate drainage for the upper district, even though it may be necessary to acquire land beyond the limits of the lower district to make a sufficient outlet. (*Clear Creek Drainage District* v. *St. Louis, Iron Mountain and Southern Railway Co.* 264 Ill. 640, distinguished.)

APPEAL from the County Court of Saline county; the Hon. CHARLES D. STILWELL, Judge, presiding.

GEORGE B. GILLESPIE, and KANE & WISE, for appellants.

KRAFT, KRAFT & ERSKINE, and W. F. SCOTT, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Rector Special Drainage District of the counties of Saline and Hamilton was organized in the Saline county court in 1910 under the Farm Drainage act and a special assessment of $78,234.36 was levied on the lands of the district. This was afterward divided into installments, the first of which was due on January 1, 1914. At the June term of the county court of Saline county an application was made by the collector for a judgment and order of sale against certain lands in the district which were in default in the payment of this installment and interest. The judgment rendered in that case was brought to this court by appeal and reversed. (*People* v. *Garner,* 267 Ill. 396.) The remanding order was filed in the county court of Saline county and the cause was then consolidated with the application made by the county collector for judgment for the in-

stallment due January 1, 1915. The collector withdrew the application so far as the claim for interest was concerned.

Two objections of a minor character were made, one of which was to the assessment of certain tracts by erroneous descriptions. Two tracts in a certain quarter section were assessed, one to T. E. Vickers by the description the north part of the northeast quarter of the northwest quarter of section 27, consisting of thirteen acres; the other to Joe Reeder by the description the south part of the northeast quarter of the northwest quarter of section 27, consisting of twenty-seven acres. It is conceded that these descriptions are legally sufficient to identify the land in the forty-acre tract and that they include all the land in the tract, but it is urged that the lands of the owners are not separately assessed, as required by the statute, because the land actually owned by T. E. Vickers consisted of thirteen acres lying north of Rector creek and the land owned by Reeder was the twenty-seven acres lying south of the creek. This creek was a very crooked stream running diagonally through the tract, so that the division of the tract into thirteen acres off the north side and twenty-seven acres off the south side put a part of the land of each of the owners in each tract. The classification of the lands by the commissioners was made by these descriptions, and the statute permitted any person who was dissatisfied to appear and object and to appeal from the decision of the commissioners to the county court. The owners of the land could easily have had the mistake remedied if they had desired to do so. The classification and assessment were not void, and this objection cannot be availed of on an application for sale of the land to pay a delinquent installment.

Objection was made by the People, and sustained, to the introduction of evidence by C. B. Garner, one of the objectors, as to the amount of the benefits to certain tracts, for the reason that he had purchased them after the organization of the district and the spreading of the original

assessment. The deeds by which he acquired title contained a clause reciting that the grantee agreed to assume and pay all drainage taxes and assessments against the land. It is argued on behalf of the appellee that only the owner at the time of the assessment has the right to object to the amount of benefits, and such owner having conveyed the property subject to the assessment, which the purchaser assumed, the latter cannot object to the amount. Where property is subject to a lien which the purchaser assumes to pay, the purchase price is regarded as including the amount of the lien and the purchaser is bound to pay it as part of the purchase price. The cases cited in support of this proposition are cases in which a personal liability arising out of contract has been enforced under such circumstances against the purchaser in favor of the holder of the lien. Where one makes a contract with another for the benefit of a third person, the third person may maintain an action directly against the first on the contract made for his benefit. The present is not an action to enforce any liability arising out of contract. It is a proceeding at law to enforce a lien against the property. Whether the purchaser is under a personal liability to pay the amount claimed to be a lien is immaterial. The People can only have judgment against the land by showing that the taxes are legally levied and assessed and charged upon the land. They cannot be declared a lien because of the agreement of the owners. No personal privilege was waived by the grantor in making the deed, and the grantee is not estopped to show the true amount of the lien or to introduce any competent evidence as to the value of the land.

The main complaint of the appellants concerns the judgment upon their objection that the assessment against their premises, respectively, is more than the premises have been or will be benefited. Rector creek was a very crooked, sluggish stream running through the territory which was organized into the Rector Special Drainage District. The North

Fork Special Drainage District of the counties of Hamilton and Saline was organized in the Hamilton county court about the same time as the Rector district, the two districts being, in part, contiguous. The outlet of the Rector Special Drainage District was in Rector creek, on the boundary line between the Rector district and the North Fork district. About five hundred feet below this point, and within the boundaries of the North Fork district, Rector creek emptied into North Fork creek. The Rector ditch was completed in 1912, and about a year later the North Fork ditch was completed. This ditch entered North Fork creek, and the North Fork Special Drainage District deepened, straightened and cleaned the North Fork creek for a distance of one and three-fourths miles below the mouth of Rector creek, and subsequently recovered a judgment against the Rector Special Drainage District for $6852 for the latter district's just proportion of the expense of the construction of this main outlet ditch. North Fork creek was also a crooked, sluggish stream, with drifts and obstructions in it. The bottom of the North Fork ditch where it stops in North Fork creek is lower than the bottom of the creek. The lands of the objectors are all near the lower end of the Rector district. The ditches of both the Rector district and the North Fork district are straight and bring down the water from above very rapidly. The evidence tended to show that the water comes down very much more quickly in times of heavy rains than before the construction of these ditches; that the outlet through the North Fork creek is insufficient to carry the waters off in times of flood, and that they back up over the lower end of the Rector ditch and the lands of objectors and remain there longer than they did before the ditches were constructed. The evidence was contradictory, but the preponderance of that which was received indicated that owing to the insufficiency of the outlet the lands of objectors have not received the benefits which had

been anticipated for them and are not now benefited to the amount of the assessment against them.

The scheme of the Rector Special Drainage District contemplated a system of drainage having its outlet in Rector creek, on the boundary of the district, and this system was constructed. The appellants' lands received a figure of classification above zero and must therefore be regarded as benefited, although the amount of such benefit is open to inquiry upon the collector's application for judgment and order of sale. (*People* v. *Soucy,* 261 Ill. 108.) On the application for judgment the delinquent list filed by the collector is *prima facie* evidence that the lands will be benefited to the amount stated in the list, and it is not enough to show that the property has not yet received that amount of benefits. It is sufficient if it will receive the benefits from the improvement when completed. Inadequacy of outlet is not sufficient to justify the refusal of judgment unless it appears that the outlet cannot be made adequate for an amount equal to the benefits to the land affected. (*People* v. *Welch,* 252 Ill. 167.) The provisions of the Farm Drainage act requiring drainage commissioners to provide outlets of ample capacity for the waters of the district are mandatory, and land owners who have been assessed for the purpose of constructing drains or ditches to drain their lands may compel the commissioners to deepen and widen the outlet so as to provide main outlets of ample capacity for the waters of the district. (*Peotone Drainage District* v. *Adams,* 163 Ill. 428; *Langan* v. *Milk's Grove Special Drainage District,* 239 id. 430.) The evidence tends to show that the completion of the work in the Rector Special Drainage District did not accomplish the results that were expected; that the outlet of the system of drainage had not the capacity to carry off with sufficient speed the quantities of water that were brought down with greater rapidity than before. For this reason the lands of the appellants have not received the benefits to which they are en-

titled. Section 41 of the Farm Drainage act was adopted to meet emergencies of this character. It provides that if the commissioners find, after the completion of the work, that for any cause the lands of the district are not drained or protected as contemplated or some of them receive partial or no benefits, they shall use the corporate funds of the district to carry out the original purpose, and, if necessary to clear and enlarge any natural or artificial channel lying beyond the district to complete an outlet, may use the corporate funds for this purpose, and if necessary privileges cannot be obtained by agreement with the land owners or the commissioners, if the land or lands through which such outlet may be made are within another organized district, the commissioners may acquire the same by condemnation, provided, in all such cases, if sufficient funds are not on hand the commissioners shall make a new tax levy.

It is insisted on the part of appellants that the commissioners of the Rector district have no power to pass through the territory of the North Fork district for a distance of one mile and three-quarters, exercising jurisdiction over the ditch of that district, and then continue beyond the territory of the North Fork district and exercise jurisdiction over territory not contiguous to any of the lands of the Rector district. This seems to be exactly what section 41 was intended to authorize. Farm drainage districts are created, by virtue of legislative authority, with such powers as the legislature grants and must exercise their jurisdiction subject to the terms of the law of their creation. The legislature has provided the manner in which the rights of upper and lower districts may be exercised, and it does not contravene any constitutional limitation to require the lower district to permit the upper district to use its outlet and enlarge the same, if necessary, upon paying compensation. Neither the statute nor the constitution has imposed any limit on the distance to which a drainage district may go to secure an outlet, except that the expense must be within

the limits of the benefits accruing to the lands of the district. The burden was on the appellants to show that their lands would not be benefited to the extent of the assessment by the construction of the improvement. They have not sustained that burden. They have shown that their lands are not now benefited, but the evidence does not justify the conclusion that a sufficient outlet, which the drainage district can be compelled to furnish, will not benefit the lands to the amount of the assessment.

The appellants rely on the case of *Clear Creek Drainage and Levee District* v. *St. Louis, Iron Mountain and Southern Railway Co.* 264 Ill. 640, for the proposition that the commissioners have no power, and cannot be compelled by *mandamus*, to construct an outlet through the lands of an adjoining district. That case was not an application for judgment and order of sale for non-payment of an assessment, but was an application for confirmation of an assessment made by a drainage district organized under the Levee act. The plans for the improvement made no provision for any outlet but relied upon an outlet being thereafter constructed by another adjoining district, though such adjoining district had not acquired the right of way for such outlet, no assessment roll had been filed for its construction, and there was no agreement between the commissioners of the two districts as to the terms for the construction and use of such outlet. The work which was proposed to be done by the Clear Creek Drainage District, and which was provided for, was the construction of a levee across the mouth of a creek, without any provision for an outlet for carrying away the water. The confirmation was denied on the well known principle that an assessment for benefits can only be made on proof that the work proposed and provided for will specially benefit the property, and that an assessment cannot legally be made for an improvement which contemplates subsequent work for which no provi-

sion is made but which is dependent on the future action of public authorities.

The judgment will be affirmed except as to the southwest quarter of the northeast quarter, the west half of the southeast quarter, the southeast quarter of the southeast quarter, the northeast quarter of the southwest quarter, the east half of the northwest quarter of the southwest quarter, and all that part of the south half of the northwest quarter lying south of the Rector Special Drainage District ditch, all in section 27, town 7, south, range 7, east, (the tracts as to which the evidence offered was rejected,) and as to those tracts the judgment will be reversed and the cause remanded.          *Reversed in part and remanded.*