(No. 13158.—Reversed in part.)

DRAINAGE DISTRICT NO. 1 IN ST. CLAIR COUNTY *et al*. Defendants in Error, *vs*. PROSPER J. SOUCY *et al*. Plaintiffs in Error.

*Opinion filed April 21, 1920.*

1. DRAINAGE—*when questions as to legality of assessments are res judicata.* In a proceeding under section 72 of the Farm Drainage act to foreclose liens for drainage taxes which have remained unpaid after the Supreme Court has affirmed a judgment and order of sale all questions as to the legality of the taxes are *res judicata*.

2. SAME—*when bill may be filed under section 72 of the Farm Drainage act to foreclose tax lien.* Under section 72 of the Farm Drainage act a bill may be filed to foreclose a lien for drainage taxes where an assessment or installment has not been paid at or prior to the annual sale by the collector. (*Hammond* v. *People,* 169 Ill. 545, explained.)

3. SAME—*what does not amount to satisfaction of taxes.* That the county clerk, there being no bidder at a sale for delinquent drainage taxes, wrote in, by direction, the name of the attorney for the district does not amount to a satisfaction of the taxes, where no money was paid and the sale was subsequently canceled and the lands forfeited.

4. SAME—*when objection that record does not show any judgments cannot be made on appeal in proceeding to foreclose lien.* In a proceeding under section 72 of the Farm Drainage act to foreclose the lien of delinquent assessments remaining unpaid after the annual sales by the collector, an objection that the record, which contains only copies of sheets from record books, does not show the judgments by the county court cannot be made in the Supreme Court, where the tax, judgment, sale, redemption and forfeiture records for the several years were before the master and no objection was made that the record books did not show the judgments.

5. LIENS—*lands must be described before lien can be enforced.* There can be no lien, and consequently no judgment, against lands unless they are so described that they can be located.

6. SAME—*how property may be described.* Property may be described by reference to government surveys or by metes and bounds, or, if divided into lots, by number or other designation of the lots.

7. SAME—*description of land as a numbered lot is prima facie sufficient.* If land is described as a lot and it is shown that there is no authenticated plat upon which such a lot appears, judgment for a lien should be refused; but a description as a certain lot of a plat or subdivision is *prima facie* sufficient in the absence of a showing that there is no such plat or subdivision.

8. SAME—*description of land as part of a lot will not authorize decree for a lien.* The description of a tract of land as a part of a certain lot, where no part of the lot is described, is insufficient to authorize a decree foreclosing a lien on the land.

WRIT OF ERROR to the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

CLYDE D. MILLER, for plaintiffs in error.

TURNER & HOLDER, for defendants in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The defendant in error Drainage District No. 1 in townships 1 and 2, north, range 9, west, and townships 1 and 2, north, range 10, west, in St. Clair county, filed its bill in the circuit court of that county to foreclose alleged liens for drainage taxes upon tracts of land within the district, and made the plaintiffs in error, Prosper J. Soucy and Mary Soucy, his wife, defendants, under an averment that they were the owners of the lands. The bill alleged the drainage district was organized on September 8, 1881, for agricultural purposes under the Farm Drainage act; that the drainage commissioners finding the existing drains and ditches inadequate, adopted plans for construction of new and additional ditches and canals, and for that purpose on May 21, 1906, classified the lands of the district; that on June 7, 1907, the commissioners, by resolution duly and legally adopted, ordered that $204,735 be raised by special assessment upon such classification; that on January 9, 1909, they made a second levy, amounting to $102,000, and on November 6, 1909, levied a third assessment for $76,500; that each of the assessments was payable in annual installments; that the defendants paid the first installment of the drainage taxes, which became due February 1, 1910, but had neglected and refused to pay any installment due there-

after; that in the years 1911 and 1912 the treasurer of the district filed a delinquent list with the county treasurer and the county treasurer made application to the county court for judgment; that in each of those years judgment was rendered against each of said tracts for the drainage taxes due for such year; that in 1913, upon the application of the county treasurer for judgment for the taxes due in that year, the defendants filed objections in writing to the drainage taxes upon each of said tracts, and the court reduced the amount of drainage taxes one-third and entered judgment for two-thirds of the amount of taxes; that the commissioners appealed to this court, and the judgment of the county court was by this court reversed and the cause remanded, with directions to overrule all objections and enter judgment against each of the tracts for the full amount of the drainage taxes; that the remanding order was filed in the county court and judgment entered and the property offered for sale under the judgment; that in the subsequent years, to and including 1916, judgment was rendered each year for the amount of the drainage taxes, and that in each year after 1910 each tract of land was offered for sale without a purchaser and declared forfeited. The bill prayed for foreclosure of the liens and a sale of the premises to satisfy the same. The defendants answered the bill, admitting the organization of the district, the classification of the lands and the ownership of or some interest in the several tracts of land, but alleging that the lands owned by the defendants were not described in the bill. The answer neither admitted nor denied the alleged failure or refusal to pay the installments of the taxes and denied all other averments of the bill. The issues were referred to the master in chancery to take the evidence and report the same with his findings of fact and law. The master took the evidence and returned the same with his finding of the facts as alleged in the bill and a recommendation for a decree of foreclosure and sale. The cause was heard on exceptions to the

master's report, which were overruled and a decree was entered accordingly on December 3, 1917. By virtue of the decree each tract of land was offered for sale by the master in chancery and purchased by the defendant in error William Reichert for the amount of taxes and costs, amounting in all to $8023.45. The sale was confirmed by the court on July 22, 1919, and the purchase price was paid to the master and the amount due the drainage district was paid to it. Thereafter a writ of error was sued out of this court and errors were assigned on the record. ·

It was admitted by the answer and stipulated at the hearing before the master that the drainage district was organized as alleged and the lands classified and the assessments levied. The appeal to this court from the judgment for drainage taxes due in 1913 involved the legality of the assessments, and it was there held that Prosper J. Soucy, the owner of the lands, was estopped to question their legality. (*People* v. *Soucy,* 261 Ill. 108.) All questions there considered are *res judicata* and the legality of the whole series of installments was there settled. *Keokuk and Hamilton Bridge Co.* v. *People,* 185 Ill. 276; *Heimann* v. *Wilke,* 219 id. 310; *Seawell* v. *Oregon Short Line Railroad Co.* 278 id. 122.

· There can be no lien, and consequently no judgment, against lands unless they are so described that they can be located and found. (*People* v. *Chicago and Alton Railroad Co.* 96 Ill. 369; *Sanford* v. *People,* 102 id. 374; *People* v. *Rickert,* 159 id. 496.) Property may be described by reference to government surveys or by metes and bounds, or if land is divided into lots, by number or other designation of the lots. If land is described as a lot and it is shown that there is no authenticated plat upon which such a lot appears judgment should be refused. Some of the tracts were described as fractional quarter sections, referring to government surveys, excepting canal or canal and railroad; others as numbered lots, and one as the southeast

end of a certain lot of "Cahokia common fields," as described in a record referred to. The descriptions as lots of a plat or subdivision were *prima facie* sufficient, and there being no showing that there were no such plats or subdivisions there was no error in declaring liens and rendering a decree as to them. There was one tract merely described as part of lot 64-B of addition to second subdivision Cahokia commons, and no part of a lot being described the description was insufficient to create any lien or authorize a decree, since the part could not be found and located from the description.

The bill was filed under section 72 of the Farm Drainage act, which provides that in case the owner or owners of any lands lying in a district and which are assessed fail or neglect to pay any assessment or assessments, installment or installments, tax levy or levies when due and the same be not collected on or before the annual sale of lands for non-payment of taxes, the commissioners of the drainage district may file a petition in the circuit court for a foreclosure of the lien, and this remedy is declared to be an additional means to enforce payment of the delinquent assessment or tax. (*Samuels* v. *Drainage Comrs.* 125 Ill. 536.) The case of *Hammond* v. *People*, 169 Ill. 545, was to enforce a lien for delinquent drainage assessments under the Levee act by virtue of section 253 of the Revenue act, which permitted such a proceeding where lands had been legally forfeited to the State for taxes for two or more years. There is no such provision in section 72, but the only condition is that an installment has not been paid prior to the annual sale of the collector, and under that section it is only necessary to show the levy of an assessment unpaid prior to a sale. In this case the county clerk was directed, in case there was no bidder for a tract, to put down the name of the attorney for the district, and he did so, but the attorney did not pay and the sale was canceled and the lands forfeited. It is argued that the action of

the clerk satisfied the taxes and therefore there could be no foreclosure for their payment. The commissioners had a right to buy at the sale if they saw fit, but nothing was paid and the sale was not completed nor the taxes paid in that way.

It is said that the record does not show any judgment by the county court except in one case, and that was not signed by the county judge. The tax, judgment, sale, redemption and forfeiture records for the several years were before the master and identification waived. The record contains only copies of sheets from those records showing a description of the lands and the taxes against each tract. If it was necessary to show judgments, there was no objection at the time that the record books did not show such judgments, and there being nothing but a general objection as to competency and relevancy, the objection now made cannot be considered. This also answers the objection that the sheets copied in the record did not show the heading of "drainage taxes." The taxes were all legally levied and unpaid prior to the sales and all conditions of section 72 were complied with.

It is objected that penalties were included in the foreclosure, but that is true only as to the judgment entered under the remanding order of this court, which fixed the amount due to the drainage district, and all penalties for subsequent years were excluded. The amount due the district for drainage taxes for 1913 was determined by this court, and if some penalty was included in the judgment entered it was part of the amount due before the sale.

The decree is reversed as to the tract of land described as part of lot 64-B of addition to second subdivision Cahokia commons and affirmed as to all other tracts. The drainage district and plaintiffs in error will each pay one-half of the costs in this court.    *Decree reversed in part.*