(Nos. 29843, 29844.— )
THE PEOPLE *ex rel.* D. V. Wheeler, County Collector, Appellant, *vs.* OWEN H. HARVEY *et al.,* Appellees.

*Opinion filed March 19, 1947.*

H. S. BURGESS, State's Attorney, of Fairfield, KERN & PEARCE, of Carmi, and CRAIG & CRAIG, of Mattoon, for appellant.

MILLS, UMFLEET & MILLS, of Fairfield, and DOBBINS, DOBBINS & FRAKER, of Champaign, for appellees.

Per CURIAM: This is a consolidated appeal from two judgments of the county court of Wayne county sustaining objections to an application for judgment and order of sale against certain lands belonging to the appellees, Owen H. Harvey and Mary Catherine Morris, respectively, for delinquent installments of a drainage assessment levied by the Skillet Fork River Outlet Union Drainage District. By agreement of the parties a single transcript of the record was filed, the appeals were consolidated in this court, were argued together as one case, and will be so considered and disposed of by one opinion.

The facts in the record, stipulated and proved, which we regard as determinative of the rights of the parties, may be summarized as follows: April 24, 1925, the county court of Wayne county entered an order organizing the Skillet Fork River Outlet Union Drainage District, comprising lands in Wayne, Hamilton and White counties, as

an outlet drainage district under section 65a of the Levee Act. (Ill. Rev. Stat. 1945, chap. 42, par. 65.) This judgment ordered the construction within the district of a drainage improvement, consisting of deepening, widening and straightening the channel of the Skillet Fork river from its outlet into the Little Wabash river in White county upstream to a point where the Skillet Fork river is crossed by the tracks of the Southern railroad in Wayne county. The course of the Skillet Fork river, in its natural state, as it then existed between these two points, was very winding and tortuous, having a total length, following the sinuosities of its channel, of more than 54 miles. The work ordered constructed reduced this length to 34.67 miles. The plans for the work provided for the excavation of approximately 4,539,438.9 cubic yards of earth, the building of five bridges, and the removal of approximately 6960 cubic yards of rock from the channel of the river.

January 16, 1926, after a hearing before a jury, the county court confirmed a special assessment, in the total sum of $389,803.39, to pay the cost of the work ordered to be constructed, and made the same payable in fifteen annual installments, the first installment falling due on January 1, 1931, and the last on January 1, 1945. On June 12, 1926, the commissioners of the district adopted a resolution authorizing bonds of the district, in the sum of $320,000, to be issued against the installments of said assessment, and in a short time thereafter said bonds were duly issued and sold.

A contract for all excavating of earth in connection with the improvement was let on August 27, 1926, at the price of 7½ cents per cubic yard. Contracts were also made at later dates for the construction of three of the bridges provided for by the plans. The construction of the improvement was never completed, and no construction work whatever was performed in the district after January, 1931, for the reason that the funds of the dis-

trict had become exhausted and the commissioners had no money with which to continue the work. No earth was ever excavated between station 1492 plus 00 and station 1830 plus 59, which latter station was the upper terminus of the proposed improvement at the tracks of the Southern railroad in Wayne county. The distance between these stations was approximately 6.41 miles. There was no clearing of the right of way between these stations and no clearing for the first four miles at the lower end of the ditch. Two of the five bridges provided for by the plans were never constructed, and the 6960 cubic yards of rock required by the plans to be removed from the channel of the Skillet Fork river were never excavated. The lands of appellee Mary Catherine Morris are located just a short distance below station 1492 where the excavation work was stopped. The lands of appellee Owen H. Harvey lie adjacent to the river about three quarters of a mile below or downstream from station 1830 plus 59.

During the time the construction work was being performed in the district, the commissioners made and filed a number of reports, showing the amount of money by them collected and the manner in which the same had been expended, which reports were approved by the court, after notice duly given to the landowners of the district, as required by law, of the date fixed for the hearing thereof and of all objections thereto.

Prior to January 21, 1935, $3000 of the bonds issued in 1926 had been paid in full and there remained outstanding and unpaid of said issue, bonds in the aggregate amount of $318,000, upon which there was accrued and unpaid interest in the sum of $42,300, making a total amount of outstanding bonds and accrued interest thereon, in the sum of $360,300. The holders of said bonds, in the face amount of $309,000, agreed to surrender their bonds for 55.383 cents on each dollar, and on January 21, 1935, the commissioners of the district filed in the office of the clerk of

the county court of Wayne county a petition, asking the court to extend the time of payment of the unpaid portion of the assessment and installments thereof, levied in 1926, and to refund the outstanding bonds of the district issued in anticipation of the collection of the assessment. Accompanying said petition there was filed a proposed draft of a revised assessment roll, reducing the unpaid assessment from $356,277.49 to $200,670.36, and dividing the reduced assessment into thirty annual installments, maturing on the first days of January in the years 1938 to 1967, both inclusive. After due hearing, upon proper notice thereof given to the landowners in accordance with section 38a of the Levee Act, (Ill. Rev. Stat. 1945, chap. 42, par. 38a,) the court, on February 4, 1935, entered an order reducing and extending the assessment and confirming and adopting the revised assessment roll filed with the petition as the assessment roll of the district. The court order also authorized the issuance of refunding bonds in the amount of $178,500, to be delivered in exchange for and redemption of the old outstanding bonds of the district. The order gave the landowners the opportunity until February 18, 1935, to pay the amount of the installments against their property in cash, and directed the commissioners to report to the court any and all such payments. March 28, 1935, the commissioners reported to the court the total amount of the extended assessments paid by the landowners, and on that date the court entered a supplementary order, directing that said amount be applied on the payment and redemption of the original outstanding bonds, on the settlement basis agreed to by the holders of such bonds, thus reducing the aggregate amount of refunding bonds necessary to $163,000, instead of $178,500, and authorizing and directing that refunding bonds of the district in the aggregate sum of $163,000, instead of $178,500, be issued and delivered as directed. These refunding bonds were duly issued by the commissioners, in accordance with the

directions of the court, and on December 29, 1936, the entire issue of $163,000 of refunding bonds was delivered to the Reconstruction Finance Corporation in exchange for the $318,000, face amount, of the original outstanding bonds of the district, which had been theretofore acquired by said corporation. Of these refunding bonds, $3000 have since been retired, and the remainder, in the face amount of $160,000, is owned and held by the Reconstruction Finance Corporation, and, together with the accrued interest thereon amounting at the time of the trial to $20,600, has never been paid.

March 19, 1943, the treasurer of the drainage district filed with the county collector of Wayne county a return of the delinquent assessments against the lands located in Wayne county which are within the district. Included in this return were the unpaid installments against the lands of appellees becoming due on January 1 of the years 1938 to 1943, both inclusive, as levied and extended in the revised assessment roll. The county collector included the same in his return on the tax judgment, redemption and forfeiture docket, and on October 4, 1943, made application to the county court for judgment and order of sale against the lands.

The objections originally filed by the landowners were based upon the following grounds: (1) That the improvement for which the assessment was levied was never constructed; (2) that the work done by the district constitutes another and essentially different improvement from that called for by the order of court and for which the assessment was levied; (3) that the work actually done constitutes a substantial and material deviation from the plans for the drainage improvement as approved by the court, and instead of benefiting the lands of the district, including the lands of the objectors, has actually damaged such lands; (4) that it would now be impossible to complete the improvement without the expenditure of an amount

which, together with prior expenditures, would greatly exceed the benefits which would thereby result to the lands in the district; and (5) that the present cost of constructing an adequate drainage outlet for the lands in the district would be greatly in excess of the benefits which would accrue to those lands. Subsequently, by leave of court, additional objections were filed, alleging that the contract for the excavation of earth and the three contracts for the construction of bridges each exceeded the sum of $500 and were let without advertising for sealed bids by notice published in a newspaper issued in Wayne county, and were therefore illegal and void.

There is no evidence in this record that supports the objectors' contention that the work actually done in the district constituted a material and substantial change in the improvement or that it constituted another and essentially different improvement, and that the work performed damaged the lands of the objectors or any other lands within the district. Neither does the record contain evidence sufficiently establishing the objectors' contention that the present cost of constructing an adequate drainage outlet for the lands in the district would be greatly in excess of the benefits which would accrue to those lands or their contention that it would now be impossible to complete the improvement ordered constructed by the court without the expenditure of an amount which, together with prior expenditures, would greatly exceed the benefits which would result to the lands in the district.

This brings us, then, to a consideration of the remaining objections, namely, that the improvement for which the assessment was levied was never constructed and that the contracts for the excavation work and the construction of certain bridges were illegal and void, and to a consideration of appellant's contention that these objections could have been urged in the refunding proceedings in opposition to the judgment entered therein on February 4, 1935, con-

firming and adopting the revised assessment roll, and therefore cannot be urged in this proceeding as objections to the enforcement and collection of appellees' delinquent drainage assessments.

In this case it affirmatively appears that the judgment confirming the original assessment in 1926 and also the judgment confirming the revised assessment in 1935 were both valid judgments, and that in entering the same there was no lack of jurisdiction either as to parties or as to subject matter or as to the power of the court to render the particular judgment entered. Section 34½ of the Levee Act provides that the act shall be liberally construed and that collection of assessments shall not be defeated by reason of any omission, imperfection or defect in any proceedings occurring prior to the judgment of the court, confirming the assessments of benefits and damages, but that said judgment shall be conclusive that all prior proceedings were regular and according to law. Under this section a drainage assessment confirmed under the Levee Act cannot be attacked collaterally except for jurisdictional defects appearing on the face of the record and no objections can be considered in any proceedings to collect such assessment which might have been urged at the time the assessment roll was confirmed. (*Lower Salt Creek Drainage Dist.* v. *Beaver,* 374 Ill. 335; *Kickapoo Drainage Dist.* v. *City of Mattoon,* 284 Ill. 393; *Donner* v. *Board of Highway Comrs.* 278 Ill. 189; *Hammond* v. *People,* 169 Ill. 545; *Blake* v. *People,* 109 Ill. 504.) Section 34½, however, applies only to proceedings prior to the confirmation judgment, and matters occurring subsequently, which go to show its annulment, are proper matters of defense upon application by the collector for judgment and order of sale, just as payment or release may be shown in defense against the enforcement of an ordinary judgment. The rule is that all objections and defenses arising subse-

quently to the confirmation of an assessment, which are of a nature to annul the judgment of confirmation, may be interposed to the application of the collector for judgment. *People ex rel. Ammann* v. *Dipper*, 392 Ill. 38.

The objectors contend they are not liable because the failure to complete the work and the letting of the contracts in question occurred after the entry of the confirmation judgment in 1926 and therefore could not have been urged when that judgment was entered, and that the judgment of the court entered in 1935, confirming and adopting the revised assessment roll and authorizing the issuance of the refunding bonds was of no significance whatever and did not deprive appellees of the right to set up such defenses in this proceeding. It is the contention of appellees that the court, when entering judgment in the refunding proceedings, was limited in its inquiry to the propriety of the financial transaction involved and had no jurisdiction to consider objections to the validity of the assessment; that if the original assessment prior to being reduced and extended was valid, the revised assessment would likewise be valid, but if the original assessment was then invalid, the revised assessment would suffer from exactly the same defects.

Section 18 of the Levee Act, at the time of this proceeding, provided that in making the assessment to pay the cost of constructing the work for which the district was organized no tract of land shall be assessed for benefits in a greater amount than it will be benefited by the proposed work. (Ill. Rev. Stat. 1943, chap. 42, par. 22.) Thus, while a judgment confirming an assessment is a conclusive adjudication that each tract of land against which the assessment is extended will be benefited by the construction of the improvement to the amount of its assessment, it is not an adjudication or indication that such lands have been assessed in the full amount that they will

be benefited by the improvement. Section 37 authorizes a second assessment when it shall appear to the court, on a petition of the prescribed number of landowners or of the commissioners of the district, that the previous assessment has been expended or is inadequate to complete such work. (Ill. Rev. Stat. 1945, chap. 42, par. 37.) Section 57 provides that to secure complete drainage of the lands within any district the commissioners may widen, straighten, deepen or enlarge any watercourse, whether within, without or below the district. (Ill. Rev. Stat. 1945, chap. 42, par. 55.) Section 50 provides that any commissioner refusing or neglecting to discharge any of the duties imposed on him by the act shall be liable to the party aggrieved for all damages sustained by him and upon conviction may be fined and removed from his office. (Ill. Rev. Stat. 1945, chap. 42, par. 51.) Section 38a authorizes the court to revise and recast any assessment and to direct the commissioners, in lieu of the outstanding bonds against such assessment, to issue the refunding bonds of the district, which shall constitute a lien upon such revised assessment. (Ill. Rev. Stat. 1945, chap. 42, par. 38a.) Section 34½ provides that the act shall be liberally construed to promote the ditching, drainage and reclamation of wet or overflowed lands and that collection of assessments shall not be defeated by reason of any omission, imperfection or defect in any proceedings occurring prior to the judgment of the court confirming the assessment of benefits and damages, but said judgment shall be conclusive that all prior proceedings were regular and according to law. Ill. Rev. Stat. 1945, chap. 42, par. 34.

We think it is clear from the above sections of the Levee Act that it was never contemplated by the act that an assessment would become invalidated solely because of the failure to complete the improvement for which it was levied and that such failure could be set up as a defense

to an application by the county collector for judgment and sale, under circumstances such as exist in the present case. Here an assessment had been levied and confirmed, bonds issued and sold against the assessment, and the proceeds thereof, together with other funds realized from the assessment, expended in the construction of the improvement. A substantial portion of such improvement was constructed in substantial compliance with the plans adopted but the work was never completed because of the inadequacy of the assessment. It also appears that by order of court, refunding bonds in the sum of $163,000 were issued and delivered in redemption of and exchange for $318,000 of the original bond issue, being all outstanding bonds of the issue, and that said assessment, levied for the construction of the work, was reduced from $356,277.49 to $200,670.36, thus reducing the assessment in the sum of $155,607.13 and reducing the outstanding bonds in the sum of $155,000. The completion of the work was never enjoined or restrained or the levy of an additional assessment to pay the cost of such completion refused by any court whatsoever, and no effort toward obtaining the completion of the work ever made by either the landowners or the commissioners of the district, although twelve years had elapsed between the cessation of work and the present application of the collector for judgment and sale. We hardly see how it can reasonably be said, under these conditions and in view of the language used in section 34½, that the assessments are invalid.

The legislature in adopting the Levee Act undoubtedly contemplated that, since an assessment for constructing a drainage improvement is levied on the basis of the estimated cost of such improvement, it might occur in some instances that the assessment would be inadequate to complete the work for which it was levied, and also that in some instances it might become necessary to construct addi-

tional work to insure the protection or drainage of the lands of the district. Section 37 was designed to meet situations of this character by providing for the levy of additional assessments for the completion of the work or the construction of additional work. Every owner of lands within a drainage district has a constitutional right to a hearing on the question whether an assessment against his land for the construction of a drainage improvement exceeds the benefits to be derived therefrom. Under the Levee Act there is a jury trial on the question of benefits, at which the landowner may appear and be heard, prior to the confirmation judgment, and this judgment when it becomes final is a conclusive adjudication, precluding any further investigation on the question of benefits in a collateral proceeding by the collector for judgment and order of sale. (*Lower Salt Creek Drainage Dist.* v. *Beaver,* 374 Ill. 335.) Under the Farm Drainage Act no application is made for a judgment of confirmation. An assessment is levied under that act when the assessment roll is made by the commissioners and filed with the clerk, but because section 27 of the act, (which section was repealed in 1901 and re-enacted in 1915,) affords the landowner, by appeal to the county court, an opportunity to be heard on the question whether the assessment exceeds the benefits, that question cannot be raised in a proceeding to secure a judgment and order of sale of lands for a delinquent assessment levied under the Farm Drainage Act. (*People ex rel. Fish* v. *Bradshaw,* 303 Ill. 558.) However, in a proceeding by the county collector to collect an assessment levied under the Farm Drainage Act during the period when said act allowed no appeal from the assessment, the question of benefits could be raised because the landowner had no previous opportunity to be heard upon the question. (*Lower Salt Creek Drainage Dist.* v. *Beaver,* 374 Ill. 335; *People ex rel. Fish* v. *Bradshaw,* 303 Ill. 558; *People ex rel. O'Connell* v. *DeYoung,* 284 Ill. 530; *People ex rel. Dorris*

v. *Garner,* 275 Ill. 228.) Yet, even in those cases inadequacy of outlet is held not sufficient to justify the refusal of judgment unless it is shown that the outlet cannot be made adequate for an amount equal to the benefits to the land affected. (*People ex rel. Dorris* v. *Garner,* 275 Ill. 228.) In the *Garner case,* this court stated: "On the application for judgment the delinquent list filed by the collector is *prima facie* evidence that the lands will be benefited to the amount stated in the list, and it is not enough to show that the property has not yet received that amount of benefits. It is sufficient if it will receive the benefits from the improvement when completed. * * * The burden was on the appellants to show that their lands would not be benefited to the extent of the assessment by the construction of the improvement. They have not sustained that burden. They have shown that their lands are not now benefited, but the evidence does not justify the conclusion that a sufficient outlet, which the drainage district can be compelled to furnish, will not benefit the lands to the amount of the assessment." The assessment in the *Garner case* was levied under the Farm Drainage Act, but the duty of drainage commissioners to provide main outlets, of ample capacity and proper construction, for the waters of the district is the same and just as imperative under the Levee Act as under the Farm Drainage Act. (*Binder* v. *Langhorst,* 234 Ill. 583.) In the present case we are of the opinion that the failure of the district, because of inadequacy of funds, to complete the improvement did not operate to invalidate the assessment, and that the evidence in this case is not sufficient, under the rule announced in the *Garner case,* to justify the refusal of judgment because said improvement has not been fully completed.

The alleged invalidity of the excavation and bridge construction contracts, relied on by appellees in their additional objections, is based upon the fact that said contracts

were let without advertising for sealed bids in a newspaper issued in Wayne county, as required by section 36 of the Levee Act. The evidence shows that none of the advertisements for bids, except for one of the bridges, were published in a newspaper of the county, but were published in trade publications, such as the "Central States Contractor" and the "Contract Reporter." The contracts which were let without notice in a newspaper of the county were made in violation of the plain mandate of the statute. Such contracts are inoperative and void. (*People ex rel. Pearsall* v. *Sperry*, 314 Ill. 205; *Rogne* v. *People ex rel. Goedtner*, 224 Ill. 449.) The invalidity of these contracts cannot, however, avail the objectors as a defense in this proceeding. The commissioners, from time to time, made and filed five reports, covering the period from April 24, 1925, to October 18, 1933, and showing the amount of money by them collected and the manner in which the same had been expended. They showed in detail the amounts paid for the excavation, for the construction of bridges and for all other purposes, the dates of such expenditures and the persons to whom the same were paid. Upon the filing of each report the court set a date for the hearing on the report and all objections thereto, and notice of such hearing was given as required in such cases by section 41 of the act. (Ill. Rev. Stat. 1945, chap. 42, par. 41.) Appellees had ample opportunity, when these reports came on for hearing, to question the validity of the contracts or object to any expenditure of funds, and, having failed to do so, they are bound by the judgment of the court approving the reports and the actions of the commissioners in the expenditure of funds, as in said reports set forth.

Appellees also made no attempt in the refunding proceedings to bring to the attention of the court either the illegality of said contracts or the uncompleted condition of said drainage improvement and made no attempt in that

proceeding to present to the court their present contention that these matters, having arisen subsequently to the original confirmation judgment, operated to annul, defeat and invalidate the assessment. It is conceded that appellees had notice as required by the statute before the judgment was entered revising the assessment and adopting such revised assessment as the assessment of the district. If they desired to repudiate the assessment they should have moved at the first opportunity. It is true that section 38a, under which the refunding proceedings were had, contains no provision in express terms granting jurisdiction to the court in which such proceedings are had to entertain objections to the validity of the assessment, but the section does provide that the court "shall make such orders as deemed proper in the premises." If the assessment sought to be revised had become invalidated and annulled and therefore uncollectible, it is difficult to see how an order revising such void assessment and authorizing bonds issued against it could be an order "deemed proper in the premises." It would certainly amount to nothing more than a mere idle ceremony for a court to so deal with such an assessment. It would therefore seem that the objection that the assessment had become invalidated was one that could have been raised in the refunding proceedings and decided before the court entered the order confirming the revised assessment, and that appellees, by remaining silent and inactive, and allowing said order to be entered, without protest or objection, recognized the validity of the assessment and the liability of their lands to pay their proportionate share of the revised assessment.

A very similar situation existed in the case of *People* v. *Weber*, 164 Ill. 412, which was a proceeding to foreclose a lien against lands of appellee for drainage taxes. In that case it was set up as a defense that the assessment for the original work when the district was organized and also the second assessment for additional work were in-

valid because based upon amounts for the probable cost of the work which were fixed by the court in excess of the amounts reported by the commissioners as the probable cost. There, the evidence showed that after the assessments were levied and bonds issued against the same an order was entered in the county court by consent and agreement of the commissioners, the bondholders and the landowners of the district, which order recited the assessments, the issue of bonds, the time when the installments of the assessments were to be due, and the amount remaining unpaid, and for the purpose of compromising existing differences it was ordered that the sale of certain lands for taxes should be set aside, that the unpaid installments of said assessments for benefits against the lands in the drainage district should be extended and become due and payable in installments of five per cent, and the bondholders surrendered thirty-five per cent of the bonds. It was held by this court in the *Weber case* that appellee, by consenting to the judgment whereby the bondholders gave up substantial rights, recognized the validity of the assessments and was thereafter precluded from disputing their validity. That case is analogous to this, in that in both instances the assessment was revised and extended and the bondholders surrendered a portion of their bonds, and that the judgment revising the assessment was in that case, as in the one here, entered by consent of the subsequently objecting landowner, such consent in the *Weber case* being evidenced by agreement and in the case here by inaction on the part of those now objecting.

For the reasons assigned, the judgments of the county court are reversed and the causes remanded, with directions to overrule the objections filed by the appellees.

*Reversed and remanded, with directions.*