Harnish v. Miles.

## Matthias G. Harnish v. Joseph S. Miles, Adm'r.

### Gen. No. 4195.

1. INTEREST—*when notes bear, notwithstanding contrary endorsement.* Notes which bear the endorsement, "no interest to be charged on this note." notwithstanding draw interest after maturity.

2. PARTY IN INTEREST—*when testimony of, will be considered on*

*appeal.* Testimony of an interested witness, given upon cross-examination after he has been called by the administrator, will be considered upon appeal where such administrator did not except to the ruling of the trial court in admitting such testimony and did not assign cross-error in the Appellate Court.

3. PARTY IN INTEREST—*when testimony of, is competent.* The testimony of an interested witness, adduced upon cross-examination, which is relevant to the direct examination of such witness given at the instance of the adverse party, is competent.

4. RES ADJUDICATA—*when not established.* The invalidity of a note is not established by a mere verdict against its validity; a final judgment is necessary.

5. EVIDENCE—*when admission of, does not appear.* A statement by counsel to the effect that he objects and excepts to the admission of particular evidence, does not show that such evidence was actually received.

Contest over distributive share in deceased estate. Appeal from the Circuit Court of Carroll County; the Hon. JAMES S. BAUME, Judge, presiding. Heard in this court at the April term, 1903. Reversed and remanded. Opinion filed October 8, 1903.

BURCHARD & BURRELL, for appellant.

GEORGE L. HOFFMAN, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

The administrator of the estate of Ann Harnish, deceased, filed his final report in the County Court, and therein stated that Matthias G. Harnish, one of the sons and heirs-at law of deceased, owed the estate on three certain instruments more than his distributive share of the estate, and that he was insolvent. Upon a hearing the County Court found such to be the facts and ordered his distributive share to be credited upon the instruments, and payments to be made to the other heirs, and that, upon such acts being performed, and the instruments duly endorsed with such credits filed in court for the benefit of the heirs, the administrator be discharged. Matthias G. Harnish, who claimed said instruments had been paid in full, appealed to the Circuit Court, where there was a trial with a like result. He now appeals from the order of the Circuit Court.

The administrator introduced in evidence three instru-

ments, each signed by Matthias G. Harnish and payable to Ann Harnish, and which we will hereafter call the three notes, as they are usually so designated in the record. The first in order of time was dated July 9, 1888, and was an agreement to pay Ann Harnish or order $48 annually during her life for the use of $1,600, the principal to revert to Matthias G. Harnish, or his heirs, after the decease of Ann Harnish. Mrs. Harnish died March 1, 1899. The second was a promissory note, dated November 1, 1888, for $300, payable to Ann Harnish or order one year after date, with interest at six per cent per annum till paid. On the back was the endorsement, " no interest to be charged on this note," signed by Ann Harnish. The third was a note dated February 16, 1892, for $300, payable to the order of Ann Harnish one year after date, with interest at six per cent per annum from date. On the bank was the endorsement, " no interest to be paid on this note," signed by Ann Harnish. There were no endorsements of any payments upon these three notes. The provision endorsed upon the back of the two $300 notes that no interest was to be charged or paid thereon, if made at the times the notes were given, respectively, or if made afterwards for a valuable consideration, would only release the interest provision in the notes, and leave them not bearing any interest by their terms, and as non-interest-bearing notes, the payee would be entitled to interest thereon at the statutory rate after maturity. R. S. Chap. 74, Sec. 2; Whitaker v. Crow, 132 Ill. 631; 3 Randolph on Commercial Paper, Sec. 1713. The production of these instruments by the administrator made a *prima facie* case that Matthias G. Harnish was indebted to the estate in a sum exceeding the $922 found to be the distributive share of each child of Ann Harnish.

Matthias G. Harnish introduced in evidence a promissory note signed by Ann Harnish, dated April 12, 1898, for $800, payable to Matthias G. Harnish or order one year after date, with interest at six per cent from date till paid, which note was assigned on the back by Matthias G. Harnish to Louis H. Burrell. He also introduced in evidence a paper

signed by Ann Harnish bearing the same date as said last described note, the body of which was as follows :

"Received from Matthias G. Harnish three hundred and fifty dollars, in payment or in full settlement of three notes held by me, which is all I hold against the said M. G. Harnish, not having the notes with me, hence this receipt."

He also called R. L. Sherman as a witness, who testified that he was present on April 12, 1898, when these papers were prepared by Matthias G. Harnish, and signed by Mrs. Harnish, and saw them signed; that at that time Mrs. Harnish and her son Matthias G. Harnish figured up the indebtedness from her to him and from him to her; that this figuring was done upon a book exhibited to the witnesses but not in the record before us; that he saw Matthias G. Harnish pay Mrs. Harnish a sum of money which was then stated to be either $300 or $350; that a balance of about $800 was struck, and he heard Mrs. Harnish say to Matthias G. Harnish, " I will give you a note to cover the balance of the debt," and also heard her say, " this makes everything square between us." Matthias G. Harnish was then offered as a witness in his own behalf, and the administrator objected, and the objection was sustained.

In rebuttal the administrator called Matthias G. Harnish as a witness, and proved by him that with his mother's consent he wrote the receipt for $350 and that she signed it; that said receipt and the $800 note were given on the day of their date, April 12, 1898, one right after the other in the same transaction; that his mother stayed with him about four weeks at that time, and was staying at his place when the $800 note was given; that he had paid money before that on these notes; that his mother and he had a running account at the time they settled; that after his mother's death he wrote his brother, but he was not positive it was about the $800 note; that after his mother signed the $800 note and the $350 receipt, she remained at his place several days; that he had never seen the three instruments introduced by the administrator from that time till he saw them in court; that she promised to destroy them when the

receipt was given, to send them to him, but was taken sick, and possibly there were other reasons why she did not; and that he was sure the receipt was given for these notes. On cross-examination by his own counsel, Mr. Harnish was asked to go into details and state all that was said and done at that time with reference to the receipt and note, and the mutual transactions which were then had. The administrator objected. The court held him not otherwise competent, but that the direct examination by the administrator was broad enough to make such cross-examination competent. It is argued by appellee that this ruling was erroneous and that the subsequent testimony of the witness on that subject was incompetent and should be excluded from our consideration. The administrator did not except to the ruling, nor has he assigned cross-errors in this court upon such ruling, and we find nothing in the record which would permit us to refuse to consider this testimony now. Moreover, when the administrator proved by Matthias G. Harnish that he had previously paid money on these instruments, that his mother and he had a running account when they settled, that when the receipt was given, his mother promised him to destroy the instruments or send them to him, that he drew the note and receipt of April 12, 1898, with her consent, and that she signed them, and that he was sure the receipt was given for the three notes, it would seem that the court correctly held that it was competent to ask the witness on cross-examination to state all that was said and done at that time and in that transaction of April 12, 1898. Subsequently some questions were asked outside of that date, but they were not objected to. The cross-examination showed that Matthias G. Harnish and his mother had had mutual dealings running from 1885 to the date of the settlement, aggregating quite large sums on each side, and producing the alleged result that upon his loaning her $350, on April 12, 1898, and taking into the account the three instruments offered in evidence by the administrator, and which the witness testified were not present but were allowed in the settlement, she then owed Matthias G.

Harnish $803.68, and he accepted her note for $800 in settlement of all matters between them. Of course if this testimony was admissible, and if it is true, Matthias G. Harnish was not liable to the estate of Ann Harnish upon these three instruments.

The administrator then introduced in evidence a letter from Matthias G. Harnish to his brother Henry, which it is claimed gives an account of the consideration of the $800 note different from that testified to by him. The administrator also offered a claim filed by Burrell against the estate based upon said $800 note, and the record of the County Court showing a trial of the claim and the verdict of a jury against the claimant. This was not followed by a judgment upon the verdict, and apparently that proceeding is not yet terminated. This record did not show any final adjudication against the validity of the $800 note, nor do any facts appear in evidence which would make an adjudication in that suit brought by Burrell binding upon Matthias G. Harnish in this proceeding. There was no jury, and the trial judge did not admit the record, but reserved the objection for a future ruling. The bill of exceptions does not show that it was afterwards admitted. A later statement, "Counsel for objector objects and excepts to admission of the judgment," does not show that the court ruled upon the question.

It is argued by the administrator that the re-direct examination of Matthias G. Harnish and his letter to his brother showed inconsistencies warranting a refusal to believe his testimony concerning the settlement; that the testimony of Sherman was weakened by his cross-examination so that his entire testimony only proves that the three notes were settled by Matthias G. Harnish paying his mother $350; and that a release of the whole debt upon payment of part is not binding. It is true, Matthias G. Harnish corrected one or two important statements before the close of his examination, and that his testimony as to the consideration for the $800 note appears to differ from his allusion to that subject in his angry letter to his brother, and these considera-

tions weaken the value of his testimony. While Sherman assented to partial statements of his testimony in questions put by the cross-examiner, it is clear that he intended to assert throughout his entire examination that there was in his presence a mutual settlement between Matthias G. Harnish and Ann Harnish of various debts owing from each to the other, and that after $350 had been paid Ann Harnish, and these three notes had been taken into the account, Ann Harnish said she still owed Matthias G. Harnish about $800, and gave this note to complete a full settlement of all matters between them. The administrator argues here that all that was settled that day was that Matthias G. Harnish paid his mother $350 on the three notes, and she thereupon attempted to release them by the receipt. If so, why did she also give him a note promising to pay him $800 in one year, with interest at six per cent? It recites it was given for value received. If she was making her son a present of nearly two-thirds of what he was owing her upon the three notes, why did she also give him a note for $800? It is not questioned but what this note was signed by her. There is no proof that she was incapable of transacting business. The testimony of Sherman and Matthias G. Harnish explains the giving of the note. If their testimony is thrown out, still the estate has not explained the giving of the $800 note, a fact inconsistent with the position taken by the estate. We conclude that there is such proof of a settlement in full and such an absence of proof contradicting or questioning the settlement, that the cause should be tried again. The order is therefore reversed and the cause remanded.

*Reversed and remanded.*