## TURNER v. HUNT DRAINAGE DIST. et al.

### No. 5863.

Circuit Court of Appeals, Seventh Circuit.

Dec. 29, 1936.

I. N. Watson, of Kansas City, Mo., Hiller & Hiller, of Kahoka, Mo., and Cavanagh, Lamet & Irwin, of Carthage, Ill., for appellant.

A. W. O'Harra of O'Harra, O'Harra & Roeth, of Carthage, Ill., for appellees.

Before EVANS and SPARKS, Circuit Judges, and BRIGGLE, District Judge.

SPARKS, Circuit Judge.

This appeal involves alleged errors arising out of the court's order denying a peremptory writ of mandamus. The proceeding was an ancillary one in which it was sought to compel appellees to levy a special assessment against the lands in the Hunt Drainage District, of a sufficient amount to satisfy appellant's judgment which he had previously recovered in the State Circuit Court against appellees. The judgment was on account of certain bridges which appellant had constructed for the Drainage District as hereinafter referred to. An alternative writ of mandamus was issued and served, to which appellees filed their return. Thereupon, appellant moved for a peremptory writ of mandamus, notwithstanding the return. After a hearing, the court denied the motion for a peremptory writ, and from that ruling this appeal is prosecuted.

The petition pleaded the judgment, the issuance of execution, its return nulla bona, and the refusal by the District and its commissioners to pay or to levy a special assessment for the enforcement of payment. The material allegations of appellees' return were either admitted, stipulated or proved and are substantially as follows:

The Hunt Drainage District was organized in 1879 under the laws of Illinois. It comprised about 16,000 acres. In 1922, proceedings were instituted to enlarge and extend its ditches and to construct bridges where necessary. The county court approved the estimates and plans in July, 1922, ordered the commissioners of the District to make the assessment roll, and recommended that an assessment be levied on the lands of the District to raise

the sum of $626,267.55, which was the estimated cost of the proposed improvements. The roll was filed, the assessment of benefits equal to the costs was approved, and a jury was empaneled to assess the benefits and damages, as provided by the Illinois statutes. Smith-Hurd Annotated Statutes, c. 42, §§ 18, 19 and 20. This was done, and the court confirmed the verdict and rendered judgment accordingly against the several tracts of land in the District in which damages were allowed and benefits assessed in the aggregate sum of $626,-267.55, and decreed that such assessments should be liens against the tracts against which assessments were not paid, until they were paid. The assessments were ordered paid in installments. The first installment of $38,417.07 was payable on January 1, 1931, and thereafter, on January 1 of each year up to and including the year 1945, the sum of $41,989.32 was payable.

The plan adopted provided for the construction of a series of bridges at a total estimated cost of $63,700 which was included in the adopted total estimate of the entire plan. Shortly after the confirmation of the assessments and benefits, certain land owners affected paid their assessments in the aggregate sum of $15,693.68, leaving an unpaid balance of $610,573.87. Thereafter, the county court ordered the Drainage District to issue bonds, pursuant to the Illinois statutes, in the sum of $610,000, and gave authority to pledge the unpaid portions of the assessments for the payment of the bonds. Those bonds were issued and sold and the purchase price was received by the drainage commissioners. The record does not disclose what was done thereafter with the funds.

The contract between appellant and the Drainage District was entered into on July 14, 1927. The bridges constructed by him thereunder were all contemplated by the adopted plan as confirmed by the county court, and the cost thereof was included in the assessment. The contract provided inter alia that monthly estimates should be made and that within ten days thereafter the district would make payments to an amount not exceeding eighty-five per cent thereof. These payments were to be made in district warrants drawn on the treasurer of the district and payable out of the special fund derived from the sale of bonds then in the hands of the treasurer. The remaining fifteen per cent of the estimates was to be retained by the Drainage District until the contract was completed.

The issue presented is whether, under the undisputed facts, appellant was entitled to a peremptory writ of mandamus as a matter of right, compelling appellees to levy a special assessment against the lands in the Drainage District sufficient to pay his judgment.

Drainage districts, organized under the Illinois Levee Act of 1879, as amended (Smith-Hurd Ill.Stats. c. 42, § 1 et seq.) are quasi public corporations for a special and limited purpose, and have only such powers as are granted by the legislature. Gasaway v. North Branch Lake Fork Special Drainage District, 339 Ill. 103, 170 N.E. 721; Smith v. People, 140 Ill. 355, 29 N.E. 676. In authorizing drainage districts to raise money, the Illinois constitution limits the legislative power to special assessments on the property benefited. The Act of 1879 recognizes that limitation. Illinois Constitution, § 31, art. 4; Corcoran v. Mud Creek Drainage District, 336 Ill. 211, 168 N.E. 509; Spring Creek Drainage District v. Railway Co., 249 Ill. 260, 94 N.E. 529. The only method provided by the Act is by filing a petition in the county court, giving notice to all the land owners, and submitting to a jury the question of the amount of benefits to be derived by levying the assessment. North Wichert Drainage District v. Chamberlain, 340 Ill. 644, 173 N.E. 90. This method was originally followed with respect to assessments for the cost of the bridges constructed by appellant.

When lands have been once assessed for the benefit that will accrue to them by virtue of an improvement, they cannot be re-assessed for the same improvement, regardless of whether the money arising from the assessment was used for that improvement or some other improvement or purpose. People v. Scanlan, 265 Ill. 609, 107 N.E. 149.

Appellant first contends that the nulla bona return on the execution conclusively established that a writ of mandamus was the only remedy he had to enforce payment of his judgment, and that under such circumstances it was an abuse of the court's discretion to refuse the writ. If we should accept the premises of this contention, the conclusion could not be denied. The fault of the deduction, however, lies in appellant's assumption that the remedy of mandamus was available to him

in any event. If this were true, it might well be that it was his only remedy, but that remedy is not established merely because he had no other remedy.

In support of his contention, appellant relies upon sections 26, 37, 65a and 159 of the Drainage Act (Smith-Hurd Ill.Stats. c. 42). Section 26 merely authorizes the commissioners to contract and be contracted with, to sue and be sued, and to do and perform, in the corporate name of the district, all necessary acts and things for the accomplishment of the purposes of the Act. True, sections 65a and 159 of the Act do authorize and command the construction and maintenance of bridges where necessary, and require that they shall be paid for by the commissioners out of the district funds, and that such funds may be provided by special assessments over the entire district under section 37. This we concede. It is quite true that section 37 gives the commissioners the power to levy additional assessments. Indeed, there is no limit to the assessments that can be levied for additional improvements under that section, but it does not give the commissioners the power to levy a second or subsequent assessment to cover the costs of an improvement for which an assessment has already been levied. Prior to the enactment of that statute in its present form, in 1915, a drainage district could not incur an obligation, or enter into a contract, prior to the levying of an assessment.

The case of Bay Bottoms Drainage District v. Stokes, 291 Ill. 68, 125 N.E. 716, upon which appellant relies, merely holds that section 37, as amended in 1915 (Smith-Hurd Ill.Stats. c. 42, § 37 and note), authorizes a drainage district to first contract for an improvement and then levy an assessment to pay for it. The case, Farrow v. Eldred Drainage and Levee District, 359 Ill. 347, 194 N.E. 515, upon which appellant also relies, involved a mandamus to compel an assessment under section 37 of the Act. There is nothing in the opinion to indicate that there was there involved any question as to levying a second assessment to pay for an improvement for which an assessment had previously been levied. We do not understand that section 37, or any other section of the statute contemplates the levying of an additional assessment for the same work as that contemplated by the original proceedings and contract. We find nothing in the cases relied upon by appellant which is inconsistent with the holding in People v. Scanlan, supra.

Appellant urges that the law, as well as good morals, obligated the entire district to pay his judgment; that the entire district received the benefits in that amount and should therefore be subjected to a levy of special assessments for the purpose of paying for them. It is conceded that the district received the benefits, but it must also be conceded that, so far as appellant is concerned, the land owners involved have not been guilty of inequity or immoral conduct. The law required that their land be subjected to an assessment sufficient to pay the cost of the improvements, including the bridges. That was done. Bonds were issued and sold for a sufficient amount to cover the assessments, and the money was placed in the hands of the commissioners of the district. Through theft, or some other more dignified form of felonious conduct which the record does not disclose, the money has disappeared. Under these circumstances, neither the law nor good morals obligates the land owners of the district to be subjected to the payment of twice the amount of their benefits. Their land is still subject to the former assessments which were ample to cover the costs of the improvements, and while a very small amount of them have been paid and are long past due, yet in this there is no immoral or inequitable conduct so far as appellant is concerned. If the past due assessments were paid now, appellant would derive no benefit, for they would belong to the bondholders. Surely, the bondholders could not be said to be responsible for a misapplication of the purchase price of the bonds by the commissioners, and with equal reason we think it can not be said that the land owners are thus responsible.

Appellant's position is indeed an unfortunate one. There is always more or less risk which the contractor must assume in contracts of this nature. Unfortunately, wherever the human equation is present, there is danger of misconduct. Here a sufficient amount of money was provided by the sale of bonds to construct the improvements. It was placed in the hands of those designated by statute for proper application. We think appellant was bound to look to that fund for his pay. The contract, in a measure, tried to protect him by providing that he should be paid monthly for eighty-five per cent of all work completed in the preceding month. It is

obvious that this provision was not resorted to nor depended upon, and it is equally obvious that appellant's loss might have been minimized had he insisted upon its enforcement. This provision, together with the financial responsibilty of the officers involved, is about the only. security available to a contractor under such contracts, and the risks incident thereto must be borne by himself. We think the court properly held that appellant was not entitled to a peremptory writ of mandamus. Other reasons for supporting the court's ruling have been presented, but we do not deem it necessary to discuss them.

Judgment affirmed.